# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

| | | |
|---|---|---|
| ROBERT THORNBERRY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.:  2:06-CV-109 JVB |
| | ) | |
| CITY OF HOBART and CITY OF | ) | |
| HOBART POLICE DEPARTMENT, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

This matter is before the Court on Defendants City of Hobart ("Hobart") and City of Hobart Police Department's ("Police Department") (collectively referred to as "Defendants") Motion for Summary Judgment [DE 39]. For the reasons set forth below, Defendants' Motion for Summary Judgment is **GRANTED**.

## BACKGROUND

On March 27, 2006, Plaintiff filed a Complaint alleging that Defendants violated his rights under the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq.* [DE 1].  Plaintiff filed an Amended Complaint, on February 28, 2007, adding a claim in which he asserted that Defendants discriminated against him on the basis of his disability in violation of the Americans With Disabilities Act ("ADA"), as amended, 42 U.S.C. § 12101, *et seq.* [DE 24].

With respect to his FMLA claim, Plaintiff alleges that Defendants interfered with his rights by terminating his employment while he was on a medical leave covered by the FMLA and also failed to provide him with appropriate information regarding his FLMA rights. (Am. Complt. ¶¶ 28, 29.) Plaintiff further asserts that Defendants violated his FMLA rights by failing

to restore him to his position or a substantially equivalent position when he was released to return to work. (*Id.* ¶ 30.) Alternatively, Plaintiff avers that Defendants terminated him in retaliation for exercising his FMLA rights and the reasons given by Defendants for his termination were pretextual. (*Id.* ¶ 31.)

Regarding his ADA claim, Plaintiff asserts that Defendants discriminated against him with respect to the terms and conditions of his employment on the basis of his disability. (Am. Complt. ¶ 34.) Plaintiff contends that, pursuant to the ADA, he is a qualified individual with a disability and is regarded as an individual with a disability. (*Id.* ¶ 35.) Plaintiff avers that he has a serious health condition which substantially limits one or more of his major life activities; however, he can still perform the essential functions of his position. (*Id.* ¶¶ 35, 37.) Alternatively, Plaintiff claims that Defendants unreasonably regarded him as having a disability that interfered with his ability to perform his job. (*Id.* ¶ 38.) Plaintiff asserts that he was terminated as a result of his disability and the reasons given by Defendants for his termination were a pretext for discrimination. (*Id.* ¶¶ 39, 40.)

On October 29, 2007, Defendants filed the instant Motion for Summary Judgment alleging that there are no genuine issues of material fact with respect to Plaintiff's FMLA and ADA claims. The motion is fully briefed and ripe for adjudication by this Court.

**FACTS**

Plaintiff was initially hired by Hobart in 1988 to serve as a Patrolman in the Police Department. (Pl.'s Dep. at 12.) He later became a Corporal, a position he held for about five years. (*Id.* at 13.) As a Corporal, Plaintiff's duties entailed answering general calls and taking

reports, making arrests, conducting searches and seizures, participating in investigations, testifying in court, and supervising other police officers when a Sergeant was absence. (*Id.* at 13-14; Def.'s Mem. at 1.)

Hobart provides Police Department members who have been employed for fifteen years or more with forty-five days of paid sick (or disability) leave, twenty-five days of paid vacation, four paid personal leave days, and eight paid holidays each year. (Buzinec Dep. at 8-9, Buzinec Dep. Ex. 1, City of Hobart Working Conditions for Employees.) Under Hobart's leave policy, Plaintiff was entitled to eighty-two days of paid leave each year.

Plaintiff, who suffers from severe headaches commonly referred to as "cluster headaches," was unable to perform his duties as Corporal at various times. In 2004, because Plaintiff was about to exhaust all of his leave available under Hobart's leave policy, he decided to request additional leave under the FMLA which would begin on October 29, 2004. (Snedecor Aff. Ex. 1, Hobart Board of Public Works and Safety Findings of Fact and Decision of 1/10/06 ("Board of Public Works Findings") ¶ 6.) On October 8, 2004, Plaintiff prepared a written request for FMLA leave and met with Hobart's Mayor, Linda M. Buzinec, to discuss taking additional days off in 2004. (*Id.* ¶ 6; Buzinec Dep. at 30-31, 34; Pl.'s Dep. at 33; Pl.'s Ex. D.) Buzinec ultimately granted Plaintiff additional paid and unpaid FMLA time off that year. (Buzinec Dep. at 36-37; Pl.'s Ex. C.)

In response to Plaintiff's request for FMLA leave, Police Chief Brian K. Snedecor provided Plaintiff with a U.S. Department of Labor Employer Response to Employee Request for Family or Medical Leave Form ("Employer Response Form"). (Snedecor Aff. ¶ 8; Pl.'s Ex. H; Board of Public Works Findings ¶ 7.) The Employer Response Form stated that while

Plaintiff was eligible for FMLA leave, his accrued paid city leave would be substituted for unpaid leave under the FMLA. (Pl.'s Ex. H; Board of Public Works Findings ¶¶ 10, 11, 12.) The Employer Response Form notified Plaintiff that he was entitled to a total of twelve workweeks of FMLA leave (60 workdays) during a twelve-month period and that the twelve-month period would be a "rolling" twelve-month period beginning on October 29, 2004. (Board of Public Works Findings ¶ 9.) Therefore, Plaintiff was entitled to twelve weeks of intermittent FMLA leave between October 29, 2004, and October 28, 2005, which would run concurrently with any paid city leave to which he was entitled. (*Id.* ¶¶ 9, 11, 12.)

Beginning on October 29, 2004, Plaintiff took his FMLA leave intermittently on separate days rather than taking all twelve workweeks (or sixty days) consecutively. (Board of Public Works Findings, ¶ 17.) Between October 29, 2004, and December 31, 2004, Plaintiff used seventeen days and seven hours of FMLA leave. (Pl.'s Exs. A & C; Zormier Aff., ¶ 5.) Between January 1, 2005 and September 8, 2005, Plaintiff used all his leave including forty-five days of sick (or disability) leave, twenty-five vacation days, four personal days, and seven holidays, or a total of eighty-one days. (Pl.'s Exs. A & C; Board of Public Works Findings ¶¶ 22, 23.) Of the eighty-one days, eighty constituted accrued paid leave or leave under the FLMA for the 2005 calendar year. (*Id.*) Therefore, as of September 8, 2005, Plaintiff had exhausted his sixty days under the FMLA and all of his paid leave days for the 2005 calendar year. (*Id.*)

On August 3, 2005, when Plaintiff's FMLA leave was close to expiring, Rick Zormier, a Police Department Lieutenant, contacted Plaintiff to find out if his doctor had released him to return to work. (Zormier Aff. ¶ 6.) Plaintiff told Zormier that he expected to be released to return to work on September 7, 2005. (*Id.* ¶ 7.) At some point in early August, Zormier informed

Plaintiff that his last paid sick day was August 22, 2005, and that his remaining paid vacation and personal leave days would run out on September 7, 2005. (Board of Public Works Findings ¶¶ 20, 27; Zormier Aff. ¶ 8.) Zormier once again spoke with Plaintiff, on September 12, 2005, to confirm that Plaintiff had been taken off the payroll as of September 5, 2005, and that his FMLA leave was exhausted as of September 8, 2005. (Zormier Aff. ¶¶ 9, 10; Board of Public Works Findings ¶ 20.) During that same telephone conversation, Zormier explained that if Plaintiff wanted further leave, he would need to speak directly with Buzinec. (Zormier Aff. ¶ 10; Board of Public Works Findings ¶ 27.) Plaintiff, however, never contacted or spoke with Buzinec to request additional leave. (Board of Public Works Findings ¶¶ 21, 28.)

Because Plaintiff exhausted his leave as of September 8, 2005, he was required to return to work on September 9, 2005. (Board of Public Works Findings ¶¶ 4, 5; Snedecor Aff. ¶ 10.) Plaintiff, however, failed to report for duty and was absent without approved leave from September 9, 2005 to September 30, 2005. (*Id*.) Because of Plaintiff's continued absences, Snedecor filed disciplinary charges with the Board of Public Works requesting that Plaintiff's employment be terminated on September 30, 2005. (Snedecor Aff. ¶ 13; Snedecor Aff. Ex. 2.) Snedecor charged Plaintiff with violating Indiana Code Section 36-8-3-4(b)(2)(E), regarding the Police Department's "absence without leave" policy and Police Department Rules and Regulations Section XII(C) for failing to report for assigned duty. (Board of Public Works Findings ¶¶ 1, 2, 3.)

On September 30, 2005, Buzinec and Snedecor met with Plaintiff and Plaintiff's wife, Susan L. Thornberry. (S. Thornberry Dep. at 17; Snedecor Dep. at 76; Buzinec Dep. at 51.) During the meeting, Snedecor offered Plaintiff an opportunity to receive disability pay while not

working which would allow him to remain eligible for his pension. (Snedecor Aff. ¶ 11; Snedecor Dep. at 76.)  Plaintiff rejected Snedecor's offer to receive disability benefits. (*Id.* ¶ 12.)

Based on the disciplinary charges filed against Plaintiff, the Board of Public Works conducted a three-session evidentiary hearing on November 15, 2005, November 21, 2005, and December 20, 2005, during which all parties were represented by counsel. (Snedecor Aff. ¶ 14; Board of Public Works Findings.)  Thereafter, at a public meeting held on January 10, 2006, the Board of Public Works voted to terminate Plaintiff's employment effective September 9, 2005. The Board of Public Works issued its Findings of Fact and Decision which state in pertinent part:

> 4.      Corporal Thornberry was absent from work without approved leave commencing on September 9, 2005 and each day thereafter.
>
> . . .
>
> 7.      Within a few days after the October 8, 2004 written request for FMLA leave was made, Police Chief Snedecor hand delivered to Corporal Thornberry the U.S. Department of Labor Employer Response to Employee Request for Family or Medical Leave form.
>
> . . .
>
> 12.     The Employer Response Form notified Corporal Thornberry that the City of Hobart would require that he substitute all accrued paid City of Hobart leave for unpaid FMLA leave, i.e. that the 2005 accrued paid City of Hobart leave days under the Working Conditions Ordinance would run concurrently with any 2005 unpaid FMLA leave days.
>
> . . .
>
> 20.     During the time that Corporal Thornberry's FMLA leave was approaching expiration, Lt. Zormier notified Corporal Thornberry that his last paid City of Hobart sick day was August 22, 2005 and that his remaining paid City of Hobart vacation and personal leave days would run out on September 7, 2005. Lt. Zormier also spoke with Corporal Thornberry on September 12, 2005 and

reminded him that his FMLA leave was exhausted as of September 8, 2005. At that time, Corporal Thornberry stated to Lt. Zormier that he was still not released by his doctor to return to work and therefore, could not report for duty.

      . . .

22.     If Corporal Thornberry called off work for the flu or some non-FMLA serious health condition, this was not on his absence records and the only such non-FMLA serious health condition absence occurred on January 14, 2005.

23.     The Hobart Police Department listing of FMLA leave days taken by Corporal Thornberry in 2004 and City of Hobart accrued paid leave/FMLA leave days taken by Corporal Thornberry in 2005 . . . lists eighty-one (81) accrued City of Hobart paid leave/FMLA leave days used during 2005 as of September 9, 2005, excluding one (1) day (January 14, 2005) when Corporal Thornberry was sick with the flu.

27.     Lt. Zormier . . . told Corporal Thornberry that he ran out of paid time off on September 7th. He indicated to him that only the Mayor could extend his time to keep him on the payroll.

28.     Corporal Thornberry did not make any such request.

29.     Corporal Thornberry was required to follow Department Rules and Regulations and he could not come back to work without an order requiring him to do so because of Department General Order No. 93-25 [which] prohibited him from doing so. It stated:

> "If an employee is absent three (3) or more consecutive scheduled working days due to illness or reports off for an injury, the employee must provide a doctor's release for work upon his/her return."

30.     Corporal Thornberry was aware his FMLA leave was about to end as of September 9th as stated by Lt. Zormier.

31.     Corporal Thornberry made no attempt to call in sick or report his medical status to his supervisors fifteen (15) days or no more than every thirty (30) days prior to his dismissal on September 9, 2005 as required by Duties and Responsibilities of Officers . . . Section XII, Paragraph C.

> "Officers shall report for assigned duty punctually unless excused by prior permission from the ranking officer, due to

illness, injury, or conditions and circumstances beyond their control. If sickness, injury, or conditions and circumstances beyond their control shall prevent [their] prompt reporting for duty, [they] shall immediately notify the department."

Corporal Thornberry failed to do so.

32.     City of Hobart Working Conditions for Employees . . . , Section 7: Sick and Disability Leave for Full-Time Employees states:

> E. Continuation of Benefits:  As a condition of the continued payment of sickness or disability benefits pursuant to this section, the employee shall, at least once a week, notify his immediate supervisor of (1) the telephone number and address at which said employee can be reached, and (2) the estimated date of his return to work.

> F. As a further condition of the payment of said sickness or disability payments, the employee shall be required to provide to the Mayor interim written reports from the employee's attending physicians, psychiatrists, or psychologists, indicating the status of the employee's relevant condition and expected date of return to work.  Such report shall be required no less than every 15 days and not more than 30 days.

> G. All such notifications and reports shall be dated and signed by a responsible supervisor and/or the Mayor, and submitted to the Clerk-Treasurer for inclusion in the employee's permanent file.

33.     FMLA (§ 825.115) Unable to Perform the Functions of the Position states:

An eligible employee may take FMLA leave due to a "serious health condition" that makes the employee "unable to perform the functions" of the employee's position.  Section 825.115 of the Interim Final Rule states that an employee is "unable to perform the functions of the position" where the health care provider has found the employee either unable to work at all, or unable to perform any of the essential functions of the position within the meaning of the ADA and its implementing regulations (29 CFR Part 1630). For employers that request employees to furnish medical certification from the employee's health care provider to support the leave request, the regulations provide the employer the option of furnishing a statement (list) of the employee's essential functions for the

health care provider to review when certifying to the employee's condition.

On the basis of these findings, the Board of Public Works determined that:

1.      Corporal Thornberry was absent from work without approved leave commencing on September 9, 2005.

2.      Corporal Thornberry failed to report for duty commencing on September 9, 2005.

Accordingly, the Board of Public Works terminated Plaintiff's employment effective January 10, 2006. (*See* Board of Public Works Findings.)

On February 7, 2006, Plaintiff filed a verified complaint in the Superior Court of Lake County claiming that the Board of Public Work's action in terminating his employment was void because "the Board had deliberated upon the evidence in private without proper notice prior to the meeting on January 10, 2006, in violation of [the Open Door Law]." *Thornberry v. City of Hobart*, 887 N.E.2d 110, 116 (Ind. Ct. App. 2008); Superior Court of Lake County Order of 6/27/07. Plaintiff  requested that "he be reinstated because the decision to dismiss him from employment was arbitrary and capricious and the decision to terminate his employment was not supported by the evidence." *Id*.

On December 21, 2006, Plaintiff filed a motion for partial summary judgment asserting that he was entitled to reinstatement as a matter of law in light of the Open Door Law violation. *Thornberry*, 887 N.E.2d at 116; Superior Court of Lake County Order of 6/27/07. Hobart subsequently filed its motion for summary judgment alleging that it was entitled to judgment as a matter of law because the "designated evidence established that Thornberry 'failed to report for duty after his allotted leave came to an end.'" *Id*.

9

After arguments was heard on the summary judgment motions, the Superior Court of Lake County issued an order granting in part Plaintiff's partial motion for summary judgment. *Thornberry*, 887 N.E.2d at 116; Superior Court of Lake County Order of 6/27/07. The Superior Court determined that the Board of Public Works committed a technical violation of the Open Door Law; however, it denied Plaintiff's motion with respect to his assertion that "such a violation necessarily voided the Board's subsequent action in terminating Thornberry's employment." *Id*. The Superior Court ultimately granted Hobart's motion for summary judgment, upheld the Board of Public Works' termination decision, and adopted the Board of Public Works January 10, 2006, Findings of Fact and Decision. (*Id*.; Superior Court of Lake County Order of 6/27/07.)

Plaintiff subsequently appealed the Superior Court of Lake County's decision to the Indiana Court of Appeals asserting that the trial court erred in granting Hobart's motion for summary judgment. *Thornberry*, 887 N.E.2d at 118. Specifically, Plaintiff contended that genuine issues of material fact existed regarding "the calculation of his leave time and that the evidence was insufficient for the Board to find: (1) that Thornberry was properly notified that his FMLA leave would run concurrently with his paid city leave; (2) that Thornberry's leave under the FMLA expired on July 18, 2005; and (3) that Thornberry was absent from work without approved leave and failed to report for duty as of September 9, 2005." (*Id*.)

On May 27, 2008, the Indiana Court of Appeals affirmed the Superior Court's decision. *Thornberry*, 887 N.E.2d at 122. In reaching its decision, the Indiana Court of Appeals determined that between January 1, 2005 and September 8, 2005, Plaintiff used all his available leave and was terminated for violating Indiana Code Section 36-8-3-4(b)(2)(E) and Police

Department Rules and Regulations:

> In this case, the designated evidence established that Hobart provided Thornberry with twenty-five days of paid vacation, eight paid holidays, four paid personal leave days, and forty-five days paid leave for sickness or disability on an annual basis. Between January 1, 2005, and September 8, 2005, Thornberry used all forty-five sick days, all four personal days, all twenty-five vacation days, and seven holidays.

> In accordance with Indiana Code section 36-8-3-4(b)(2)(E), the Board may dismiss a member of the police department upon a finding that the member has been absent without leave. The Board may also dismiss a police officer upon a finding that the police department member has violated the rules. Indeed, the Hobart Police Department Rules and Regulations require an officer to report for assigned duty punctually unless excused by prior permission from the ranking officer.

> Here, the designated evidence established that because Thornberry had exhausted all of his permitted leave, yet was unable to return to work because of his medical condition, he was, in fact, absent without approved leave.

*Thornberry*, 887 N.E.2d at 119 (citation omitted).

Next, with respect to the exhaustion of Plaintiff's FMLA leave, the Court of Appeals found:

> Thornberry acknowledged that the sick days documented between June 30, 2005, and August 22, 2005, were the result of the cluster headaches that qualified under the FMLA. During that period, Thornberry missed twenty-nine days of work. Thornberry then used thirteen remaining vacation days through September 8, 2005. Thornberry's physician still had not released him to return to work. Moreover, the records generated by the Police Department specifically designate that Thornberry took seventeen days and seven hours of leave after October 29, 2004, for a qualified FMLA health condition. Therefore, according to Thornberry's own testimony, between October 29, 2004, and September 8, 2005, he was absent for fifty-nine days and seven hours as a result of his FMLA health condition. Therefore, it was certainly reasonable for the Board to find that at least one hour of the additional forty days that Thornberry was absent from work was because of his FMLA-qualified health condition. As a result, Thornberry's claim that the evidence failed to establish that Thornberry exhausted his FMLA leave prior to September 9, 2005, fails.

*Thornberry*, 887 N.E.2d at 121 (citations omitted.)

Regarding Plaintiff's notification that his FMLA leave would run concurrently with his paid leave, the Indiana Court of Appeals held:

> Thornberry claims that his dismissal was not warranted in light of section 825.208(c) of the FMLA, which requires an employer to notify the employee within two days if paid leave is to be substituted for unpaid FMLA leave. According to this provision, Thornberry asserts that he was not properly notified that his FMLA leave would run concurrently with his paid leave.
>
> Here, the record shows that although Police Chief Snedecor could not state precisely when the notice was delivered to Thornberry, he testified at the evidentiary hearing on November 15, 2005, that he prepared and delivered to Thornberry the Employer Response Form shortly after receiving Thornberry's October 8, 2004, correspondence requesting FMLA leave. Chief Snedecor further testified that the Employer Response Form indicated that any paid leave would be substituted for unpaid FMLA leave. Chief Snedecor also acknowledged that the form was provided to Thornberry "within a matter of days" after October 8, 2004. When pressed further, Chief Snedecor stated that he responded to Thornberry "within approximately two days."
>
> We also note that Lieutenant Zormier testified that at some point prior to August 22, 2005, he advised Thornberry that his sick leave was to expire on that day, and that Thornberry would be required to use his remaining vacation and personal leave days if he was unable to return to work on August 22, 2005. He also told Thornberry during that same conversation that his leave time would expire on "either September 5 or September 7, 2005." Thereafter, on September 12, 2005, Lieutenant Zormier informed Thornberry that his leave time had expired on September 7, 2005, and only the mayor could extend his leave. In light of this testimony, there was sufficient evidence to support the Board's finding that the Employer Response Form was delivered to Thornberry in a timely fashion and that Thornberry was notified that his FMLA leave would run concurrently with his paid city leave.

*Thornberry*, 887 N.E.2d at 119-20 (citations omitted). The Court of Appeals further stated:

> As an aside, even assuming for the sake of argument that Thornberry had not been properly notified that his FMLA leave would run concurrently with the leave provided by Hobart, the United States Supreme Court in *Ragsdale v. Wolverine World Wide*, 535 U.S. 81, 122 S.Ct. 1155, 152 L.Ed.2d 167 (2002), addressed the notion of holding employers liable for simple administrative oversights:

Section 825.700(a) [of the FMLA] is also in considerable tension with the statute's admonition that "nothing in this Act ... shall be construed to discourage employers from adopting or retaining leave policies more generous than any policies that comply with the requirements under this Act." The FMLA was intended to pull certain employers up to the minimum standard, but Congress was well aware of the danger that it might push more generous employers down to the minimum at the same time. Technical rules and burdensome administrative requirements, Congress knew, might impose unforeseen liabilities and discourage employers from adopting policies that varied much from the basic federal requirements.

In providing additional guidance for interpreting FMLA provisions, the *Ragsdale* Court further explained that a plaintiff must demonstrate specific prejudice that he suffered from a technical, administrative violation of the FMLA in order to prevail on an FMLA claim:

To prevail under the cause of action set out in section 2617, an employee must prove, as a threshold matter, that the employer violated section 2615 by interfering with, restraining, or denying his or her exercise of FMLA rights. Even then, section 2617 provides no relief unless the employee has been prejudiced by the violation.

In this case, Thornberry has presented no evidence suggesting that Hobart's paid leave policy prejudiced him from receiving the twelve weeks of unpaid leave guaranteed by the FMLA. In any event, as discussed above, sufficient evidence was presented for the Board to determine that Thornberry was adequately notified that his FMLA leave time expired on September 8, 2005, and the trial court did not err in affirming the Board's findings of fact with regard to that issue.

*Id.* at 120 (citations omitted).

Furthermore, the Court of Appeals found regarding Plaintiff's failure to report for duty

on September 9, 2005:

Thornberry argues that the grant of summary judgment for the City was erroneous because the designated evidence failed to establish that his absence from the Police Department was without accrued leave time. Notwithstanding this claim, Lieutenant Zormier testified that Thornberry was scheduled to work on the days when leave was not provided. Although Thornberry had the option of requesting additional leave time from the Mayor, he chose not to do so. Thornberry admitted that he did not report for duty on September 9, 2005, September 12, 2005, September 13, 2005, the week of September 19, 2005, or the week of September

26, 2005.

Although Thornberry maintains that he was not ordered to return to work on September 9, 2005, and was not assigned to duty on that day, he acknowledged that Hobart Police Department General Order 93-25 (General Order) prohibits an employee who has been absent for more than three consecutive working days due to illness or injury from returning to work without a doctor's release for work.

As discussed above, Thornberry was absent from duty beginning June 30, 2005, because of the cluster headaches. As of September 8, 2005, Thornberry's physician had still not released him to work because of that condition. Therefore, pursuant to the terms set forth in the General Order, Thornberry was prohibited from returning to duty on September 9, 2005, and he could not be ordered to return or assigned to duty on that day.

However, as we have already discussed, the Board found, based upon sufficient evidence, that Thornberry's FMLA leave had expired by that date. Moreover, Thornberry's paid leave through Hobart expired on September 8, 2005. Because Thornberry's available leave was exhausted under both the FMLA and Hobart's leave policy, and since he was unable to return to work according to the terms of the General Order, the evidence established that Thornberry was absent without leave each day after September 8, 2005.

*Id.* at 121-22 (citations omitted).

The Court of Appeals in concluding that the trial court had properly granted Hobart's

motions for summary judgment stated:

In essence, to accept Thornberry's argument would conceivably entitle any ill or injured police officer to indefinite leave until released to return to work by his or her physician. To apply the provisions of the FMLA to allow an employee such indefinite leave would fly in the face of the intent of the legislation. As a result, we conclude that there was sufficient evidence for the Board to conclude that Thornberry was absent without leave commencing September 9, 2005. Thus, the Board properly exercised its authority when it terminated Thornberry's employment as of that date, pursuant to Indiana Code section 36-8-3-3 and the Police Department's rules and regulations. Accordingly, we conclude that the trial court properly granted Hobart's motion for summary judgment.

*Thornberry*, 887 N.E.2d at 122.

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Rule 56(c) of the Federal Rules of Civil Procedure)). Once the moving party has produced evidence to show that it is entitled to summary judgment, the party seeking to avoid such judgment must affirmatively demonstrate that a genuine issue of material fact remains for trial. *LINC Fin. Corp. v. Onwuteaka*, 129 F.3d 917, 920 (7th Cir. 1997).

In deciding a motion for summary judgment, a court must "review the record in the light most favorable to the nonmoving party and . . . draw all reasonable inferences in that party's favor." *Vanasco v. National-Louis Univ.*, 137 F.3d 962, 965 (7th Cir. 1998). Nevertheless, the nonmovant may not rest upon mere allegations, but "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A genuine issue of material fact is not shown by the mere existence of "some alleged factual dispute between the parties," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986), or by "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson*, 477 U.S. at 252. It is well-settled that summary judgment should be granted "only where it is perfectly clear that there is no dispute about either the facts of the controversy or the inferences to be drawn from such facts." *Cent. Nat'l Life Ins. Co. v. Fid. & Deposit Co. of Md.*, 626 F.2d 537, 539 (7th Cir. 1980) (citing

*U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).


# ANALYSIS

**A.      Family and Medical Leave Act Claim**

The FMLA entitles an eligible employee who suffers from a serious health condition that renders him unable to perform the functions of his position a total of twelve workweeks of leave during each twelve-month period. 29 U.S.C. § 2612(a)(1)(D). After the period of qualified leave expires, an employee is entitled to be reinstated to the former position or an equivalent one with the same terms and benefits of employment that existed prior to the employee taking leave. *Id*. § 2614(a).  In order to guarantee the availability of these rights, the FMLA provides that it "shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided." *See id*. § 2615(a)(1). The FLMA also prohibits an employer from retaliating against an employee who exercises his rights under the FMLA. *See id*. § 2615(a)(2) (prohibiting discrimination against persons who oppose practices that are unlawful under the FMLA); *id*. § 2615(b) (prohibiting discrimination against persons who participate in or institute FLMA proceedings or inquiries).

Plaintiff asserts that Defendants interfered with his rights under the FMLA by terminating his employment while he was on a medical leave covered by the FMLA and also failed to provide him with appropriate information regarding his FLMA rights. (Am. Complt. ¶¶ 28, 29.) Thus, Plaintiff claims that Defendants violated his FMLA rights by failing to restore him to his position or a substantially equivalent position when he was released to return to work. (*Id.* ¶ 30.)  Alternatively, Plaintiff asserts that Defendants terminated him in retaliation for exercising

his FMLA rights the reasons given by Defendants for his termination were pretextual. (*Id.* ¶ 31.)

**(1)** *Interference Claim*

Defendants move for summary judgment asserting that there are no genuine issues of material fact with respect to Plaintiff's FMLA claim. (Defs.' Mem. at 5-11; Defs.' Reply at 1-11.) In essence, Defendants contend that Plaintiff is precluded from asserting his FMLA claim because the doctrine of res judicata, or issue preclusion, applies in this case. Defendants assert that the findings and decisions rendered by the Board of Public Works and the Superior Court of Lake County establish that Plaintiff (1) was aware of his rights and responsibilities under Hobart's leave policy; (2) was absent from his employment in excess of the allotted leave; (3) failed to notify Defendants of his intended absences; and (4) was terminated for violating Police Department Rules and Regulations Section XII(C) for failing to report for assigned duty.[1] (Defs.' Mem. at 6.)

Defendants further assert that it is undisputed that Plaintiff was not eligible for FMLA leave because between October 29, 2004, and September 8, 2005, he utilized far more than twelve weeks of intermittent leave due to his cluster headaches. (Defs.' Mem. at 7.) Defendants point out that the Board of Public Works and Superior Court of Lake County previously found that Plaintiff used 81 days of leave during 2005, in addition to the seventeen days (and seven hours) of FMLA leave he took in the later half of 2004. (*Id.* at 7-8.)

Finally, Defendants assert that Plaintiff's argument that he did not know or receive notice

---

[1]It bears noting that the parties briefed the subject motion for summary judgment before the Indiana Court of Appeals rendered its decision in *Thornberry v. City of Hobart*, 887 N.E.2d 110 (Ind. Ct. App. 2008) on May 27, 2008.

that his paid city leave would run concurrently with his FMLA leave is immaterial. (Defs.' Mem. at 8-10.) Thus, Defendants contend that the Supreme Court has decided that an employee cannot base a cause of action on an alleged failure to be notified of the concurrent use of paid and unpaid leave when the employee has received all of the benefits which the FMLA permits. (Defs.' Reply at 10.) So, while Defendants acknowledge that Plaintiff was accommodated with additional leave during the 2004 year, Plaintiff was never promised that in 2005 his paid days off would not be counted as part of any leave he might take. (Defs.' Mem. at 8.)

Plaintiff, however, avers that the doctrine of res judicata or issue preclusion does not bar the instant action because the only issue decided by the Board of Public Works and Superior Court of Lake County was whether he was terminated for violating Police Department Rules and Regulations Section XII(C) for failing to report to duty.[2] (Pl.'s Resp. at 5.) Plaintiff asserts that Defendants interfered with his rights under the FMLA because he did not receive the FMLA leave to which he was entitled and Defendants failed to reinstate him to his former Corporal or equivalent position. (*Id*. at 7.) Thus, Plaintiff contends Defendants represented that his FMLA leave entitlement would begin after he exhausted his paid city leave and his FMLA leave did not run concurrently with his paid leave. (*Id*. at 11.) Plaintiff also argues that there is no evidence to suggest that he knew or should have known that his FMLA leave would run concurrently with his paid city leave in 2005. (*Id.* at 13.)

---

[2]To the extent Plaintiff claims Defendants should be precluded from raising the affirmative defense of estoppel because they failed to assert it in either their Answer or Amended Answer, the Seventh Circuit has held that "a delay in asserting an affirmative defense waives the defense only if the plaintiff was harmed as a result." *Curtis v. Timberlake*, 436 F.3d 709, 711 (7th Cir. 2005). Here, Plaintiff was not harmed or prejudiced as he has confronted the defense in responding to Defendants' Motion for Summary Judgment.

In order for a plaintiff to prevail on an FMLA interference claim, "an employee need only show that his employer deprived him of an FMLA entitlement; no finding of ill intent is required." *Burnett v. LFW Inc.*, 472 F.3d 471, 477 (7th Cir. 2006) (citation omitted). An employee must establish that: "(1) he was eligible for the FMLA protections, (2) his employer was covered by the FLMA, (3) he was entitled to leave under the FMLA, (4) he provided sufficient notice of his intent to take leave, and (5) his employer denied him FMLA benefits to which he was entitled." *Id.*

The Court finds that Plaintiff cannot prevail on his FMLA interference claim because the doctrine of res judicata or issue preclusion is applicable here. "Title 28 U.S.C. § 1738 provides that '[state] judicial proceedings . . . shall have the same full faith and credit [in United States courts] as they have by law or usage in the courts of [the] State . . . from which they are taken.'" *Starzenski v. City of Elkhart*, 87 F.3d 872, 877 (7th Cir. 1996). The general rule of full faith and credit is that parties should not be permitted to relitigate issues that have been previously decided by courts of competent jurisdiction. *Sam Remo Hotel, L.P. v. City and County of S.F., Ca.*, 545 U.S. 323, 336 (2005). Full faith and credit is typically applied through the doctrine of res judicata which is used by courts to preclude cases and issues which have been adjudicated in other courts. *Kremer v. Chem. Const. Corp.*, 456 U.S. 461, 466 (1982); *Allen v. McCurry,* 449 U.S. 90, 96 (1980). Therefore, res judicata serves to "prevent repetitious litigation of disputes that are essentially the same." *Perry v. Gulf Stream Coach, Inc.*, 871 N.E.2d 1038, 1048 (Ind. Ct. App. 2007).

Here, under § 1738, "we turn to Indiana law to determine the preclusive effect of its own judgments." *Starzenski*, 87 F.3d at 877 (citing *Marrese v. Am. Academy of Orthopaedic*

*Surgeons,* 470 U.S. 373, 380-81 (1985); *Lolling v. Patterson*, 966 F.2d 230, 235 (7th Cir. 1992)). "Indiana Law provides two separate doctrines under which a prior judgment bars litigation in a subsequent case: claim preclusion and issue preclusion." *Starzenski*, 87 F.3d at 877 (citation omitted). Therefore, "all issues decided directly or implicitly in a prior appellate decision are binding in all subsequent portions of the same case." *Perry*, 871 N.E.2d at 1048.

As is pertinent here, issue preclusion "applies where the causes of action are not the same but where some fact or question has been determined and adjudicated in the former suit, and the same fact or question is again put in issue in a subsequent suit between the parties." *Perry*, 871 N.E.2d at 1048 (citation omitted). "In such cases the former adjudication of that fact, if properly presented and relied upon, will be conclusive on the parties." *In re Adoption of A.N.S.*, 741 N.E.2d 780, 786-87 (Ind. Ct. App. 2001). Moreover, in deciding whether res judicata applies, Indiana courts have oft-repeated that it is helpful to inquire whether identical evidence is supportive of the issues involved in both cases. *Indianapolis Downs, LLC v. Herr*, 834 N.E.2d 699, 703 (Ind. Ct. App. 2005).

The Indiana Court of Appeals adjudicated specific facts and issues relative to Plaintiff's FMLA interference claim which are now before this Court. Specifically, the Indiana Court of Appeals determined Plaintiff (1) was terminated for violating Indiana Code Section 36-8-3-4(b)(2)(E), regarding the Police Department's "absence without leave" policy and Police Department Rules and Regulations Section XII(C) for failing to report for assigned duty on September 9, 2005; (2) received his full entitlement of FMLA leave between October 29, 2004, and September 8, 2005; (3) exhausted his FMLA leave prior to September 9, 2005; (4) was

notified that his FMLA leave would run concurrently with his paid leave[3]; (5) was advised that his sick leave would expire on August 22, 2005, and he would be required to use his remaining vacation and personal leave days if he was unable to return to work on August 22, 2005; (6) was told that his leave time would expire on either September 5, 2005, or September 7, 2005; (7) was informed that his leave had expired on September 7, 2005, and that only Buzinec could extend his leave; (8) failed to request additional leave from Buzinec; and (9) admitted that he did not report for duty on September 9, 2005, September 12, 2005, September 13, 2005, the week of September 19, 2005, or the week of September 26, 2005.

Under the doctrine of res judicata, this Court is barred from considering those issues which the Indiana Court of Appeals decided in *Thornberry v. City of Hobart*, 887 N.E.2d 110 (Ind. Ct. App. 2008). Because the Indiana Court of Appeals adjudicated the salient issues applicable to Plaintiff's FMLA interference claim, namely that he received his full entitlement of FMLA leave between October 29, 2004, and September 8, 2005, he exhausted his FMLA leave prior to September 9, 2005, and he was properly notified that his FMLA leave would run concurrently with his paid city leave, this Court is precluded from considering or deciding these issues. *See Perry*, 871 N.E.2d at 1048 (issue preclusion "applies where the causes of action are not the same, but where some fact or question has been determined and adjudicated in the former suit, and the same fact or question is again put in issue in a subsequent suit between the parties.") Therefore, Plaintiff has failed to establish an interference claim under the FMLA because at the time of his

---

[3]Plaintiff attempts to create a factual issue by claiming he did not have notice of the fact that his paid city leave would run concurrently with his FMLA leave because he did not receive the Employer Response Form from Snedecor. (Pl.'s Resp. at 15.) Plaintiff's contention is without merit because, as discussed, the Indiana Court of Appeals found that Plaintiff was properly notified that his FMLA leave would run concurrently with his paid city leave.

termination, he had exhausted his FMLA leave entitlement and was not eligible for additional FMLA leave. Accordingly, Plaintiff was not covered by the protections afforded by the FMLA and Defendants were not required to restore him to his Corporal or an equivalent position. *Burnett*, 472 F.3d at 477.

### (2) *Retaliation Claim*

Alternatively, in his Amended Complaint, Plaintiff asserts that Defendants retaliated against him by terminating him for exercising his right to take FMLA leave and that the reasons given for his termination were a pretext for discriminating against him for asserting these rights. (Am. Complt. ¶ 31.) While Plaintiff alleges a retaliation claim in his Amended Complaint, he has failed to explain or develop his claim in his responsive brief. Because Plaintiff does not explain or develop his argument, he has waived it. *See United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991) ("[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived."); *see also Am. Nat'l Bank and Trust Co. of Chi. v. Alps Elec. Co., Ltd.,* 2002 WL 48489, at *2 (N.D. Ill. Mar. 29, 2002) ("[T]he court is not required to scour the record to unearth material factual disputes or evidentiary support for a party's position.") Thus, "it is not [the Court's] job to do counsel's work of organizing or formulating a party's arguments, . . . nor is it the Court's function to 'scour the record in search of evidence to defeat a motion for summary judgment.'" *Pratt v. Ill. Dep't of Corrections*, 2007 WL 4327861, at *3 n.3 (S.D. Ill. Dec. 11, 2007) (citations omitted); *see also U.S. v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs.")

In any event, however, assuming *arguendo* that the Court could consider Plaintiff's

retaliation claim under the FMLA, he would need to proceed under either the direct or indirect methods of proof. *Burnett*, 472 F.3d at 481. Under the direct method, a plaintiff must "present evidence that his employer took materially adverse action against him on account of his protected activity." *Id*. (citation omitted). Under the indirect method of proof, a plaintiff "must show that after taking FMLA leave (the protected activity) he was treated less favorably than other similarly situated employees who did not take FMLA leave, even though he was performing his job in a satisfactory manner." *Id*. at 482. (citation omitted).

Upon a review of the record, the Court finds that Plaintiff has failed to produce direct evidence that Defendants terminated him in retaliation for exercising his right to take FMLA leave and that the reasons given for his termination were a pretext for discriminating against him for asserting these rights. As discussed, the Indiana Court of Appeals determined that, at some time prior to August 22, 2005, Zormier spoke with Plaintiff and advised him that his sick leave would expire on that day and he would be required to use his remaining vacation and personal leave days if he was unable to return to work on August 22, 2005. Zormier also informed Plaintiff during that same conversation that his leave would expire on either September 5, 2005, or September 7, 2005. Subsequently, on September 12, 2005, Zormier informed Plaintiff his leave had, in fact, expired on September 7, 2005, and if he required additional leave, he would need to speak to Buzinec. However, Plaintiff never contacted Buzinec to request additional leave and was terminated for violating Indiana Code Section 36-8-3-4(b)(2)(E), regarding the Police Department's "absence without leave" policy and Police Department Rules and Regulations Section XII(C) for failing to report for assigned duty on September 9, 2005.

With regard to the indirect method of proof, Plaintiff has failed to show that after taking

FMLA leave he was treated less favorably than other similarly situated employees who did not take FMLA leave. As stated, while Plaintiff never explains or develops his FMLA retaliation claim in his responsive brief, he does make reference to a former Police Department employee, Carolyn Kirchenstien, whom he identifies as an individual he claims to be similarly situated and treated more favorably. (Pl.'s Resp. at 13, 20.) Towards that end, Plaintiff points out that Defendants did not apply Kirchenstien's FMLA leave concurrently with her paid city leave. (*Id.* at 13.) Thus, Plaintiff contends that Defendants allowed Kirchenstien to take twelve weeks of FMLA leave after her paid leave had expired in 2003; therefore, she received more favorable treatment than Plaintiff because his FMLA leave ran concurrently with his paid city leave.

Under the indirect method, however, Plaintiff "must show that after taking FMLA leave . . . he was treated less favorably than other similarly situated employees who did not take FMLA leave, even though he was performing his job in a satisfactory manner." *Burnett*, 472 F.3d at 482. Because the only employee Plaintiff mentions in his responsive brief is Kirchenstien, Plaintiff has failed to identify an appropriate similarly situated employee or comparator because, as discussed, under the indirect method, he must identify another employee who did not take FMLA leave and was treated more favorably.

However, it bears mentioning that, in 2004, at Plaintiff's request, Buzinec gave him additional time off after he had used all of his paid leave. Assuming *arguendo* that Kirchenstien could be viewed as being similarly situated or an appropriate comparator, the key distinction between Kirchenstien and Plaintiff was that Kirchenstien was accommodated on one occasion whereas Plaintiff developed a pattern of absences that each year involved exhaustion of all paid time off, which was followed by even more time away from work. Plaintiff, therefore, has failed

to establish a retaliation claim under either the direct or indirect methods of proof.

Accordingly, the Court, finds that there are no genuine issues of material fact with respect to Plaintiff's claims of interference and retaliation under the FMLA and Defendants are entitled to judgment as a matter of law.

**B.      Americans With Disabilities Act Claim**

The ADA prohibits an employer from discriminating against a qualified individual with a disability:

> No covered entity shall discriminate against a qualified individual with a disability  because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.  42 U.S.C. § 12112(a).

Under the ADA, "[a]n individual is 'disabled' if he has (1) a physical or mental impairment which substantially limits one or more of the major life activities; (2) a record of such an impairment; or (3) if he is regarded as having such an impairment." *Roth v. Lutheran Gen. Hosp.*, 57 F.3d 1446, 1454 (7th Cir. 1995) (citations omitted). The ADA, however, only protects a "qualified individual with a disability." 42 U.S.C. § 12111(8). As is pertinent here, to be a "qualified individual with a disability," a plaintiff must be "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds." *Id*. A plaintiff bears the burden of proof and must demonstrate that he is a "qualified individual with a disability" in order to successfully prosecute a claim under the ADA. *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 563 (7th Cir. 1996); *see also Nowak v. St. Rita High Sch.*, 142 F.3d 999, 1003 (7th Cir. 1998) ("[t]he

plaintiff bears the burden of proof on the issue of whether he is a 'qualified individual' under the ADA.")

Defendants contend that Plaintiff is not a "qualified individual with a disability" under the ADA because he was unable to perform the essential functions of his position due to his absenteeism. (Def.'s Mem. at 11-12.) Plaintiff, on the other hand, asserts that attendance is not an essential function of his Corporal position. (Pl.'s Resp. at 19.) Plaintiff avers that Defendants' own leave policies and actions show that attendance is not an essential function of his position because, pursuant to Hobart's Working Conditions for Employees, he was entitled to 82 days off each year, or approximately one-third of the work year. (*Id*. at 19-20.) Plaintiff claims that of the 261 days per year he was scheduled to work, he was only required to attend work 119 days per year, after exhausting all paid leave (82 days) and twelve additional weeks of FMLA leave (60 days) (*Id*.) To be clear, Plaintiff is not arguing that he could do his work from home or other similar place and, therefore, he did not need to be in the workplace in order to perform his duties. (*Id*.) Rather, he is arguing that work as a Corporal is in itself not essential in order for him to remain employed in this position. (*Id*.) Plaintiff's argument is disingenuous and without merit.

Attendance is an essential aspect of most jobs. *See EEOC v. Yellow Freight Sys.*, *Inc.*, 253 F.3d 943, 948-49 (7th Cir. 2001); *see also Waggoner v. Olin Corp.*, 169 F.3d 481 (7th Cir. 1999) (The fact is that in most cases, attendance . . . is a basic requirement of most jobs.") Moreover, "an employee who does not come to work cannot perform the essential functions of his job." *Nowak*, 142 F.3d at 1004; *see also Mazza v. Bratton*, 108 F.Supp.2d 167, 175 (E.D.N.Y. 2000) ("[a]n individual is not qualified for his position if he is unable to come to work.") Accordingly, "[t]he rather common-sense idea is that if one is not able to be at work, one cannot be a qualified

individual." *Waggoner*, 169 F.3d at 482.

The Court therefore finds that Plaintiff was not a "qualified individual with a disability" because he was unable to perform the essential functions of his Corporal position which required job attendance. Plaintiff's attempt to show that attendance is not an essential function of his position by citing to Defendants' generous sick leave, personal leave, and vacation leave policy is without merit. The fact that Plaintiff was entitled to take days off in accordance with Defendants' leave policy does not mean that reporting for duty was not an essential function of his position. Plaintiff testified that his duties entailed answering general calls and taking reports, making arrests, conducting searches and seizures, participating in investigations, and testifying in court. (Pl.'s Dep. at 13-14; Def.'s Mem. at 1.) As a Corporal, Plaintiff also served as a supervisor under the Sergeant. (Pl.'s Dep. at 14.) On the basis of Plaintiff's duties, the expectation is that Plaintiff would need to be at work in order to perform them. With regard to Plaintiff's supervisory duties, Plaintiff would be required to be at work to supervise other police officers. Plaintiff's duties, therefore, cannot be accomplished from home. Moreover, consistent with those duties, Snedecor testified in his Affidavit that "[a]ttendance is an essential function of the position of Corporal at the Hobart Police Department."  (Snedecor Aff. ¶ 6.)

Furthermore, Plaintiff has failed to produce any evidence to sustain his burden of proving that he could perform the essential functions of his Corporal position or, in other words, that he is, in fact, a "qualified individual" under the ADA. *Weigel v. Target Stores*, 122 F.3d 461, 468 (7th Cir. 1997) ("As a general matter . . . absent some such affirmative showing of the plaintiff's ability to perform the essential functions of the position, there will be no genuine issue of material fact as to whether the plaintiff is a 'qualified individual' and the employer will be

entitled to judgment as a matter of law.")

Accordingly, the Court finds there are no genuine issues of material fact with respect to Plaintiff's ADA claim and Defendants are entitled to judgment as a matter of law.

## CONCLUSION

Based on the foregoing, Defendants' Motion for Summary Judgment is **GRANTED** [DE 39].

SO ORDERED on September 18, 2008.

s/ Joseph S. Van Bokkelen
JOSEPH  S.  VAN  BOKKELEN
UNITED STATES DISTRICT JUDGE